## City Court.

*General Term—April,* 1884.

## CHARLES KRUSE, Plaintiff and Appellant, *against* WILLIAM W. DUSENBURY, et al., Defendants and Respondents.

If a manufacturing corporation created under the laws of New Jersey has no office or place of business in that State, and opens an office and transacts business in the city of New York, the incorporators are personally liable for all debts contracted in the corporate name. The charter in such a case does not fit the company, and the incorporators by going outside of it cannot screen themselves from personal responsibility.

Kruse *v.* Dusenbury.

Appeal from a judgment entered upon the dismissal of the plaintiff's complaint.

*A. Walker Otis,* for appellant.

*Ira D. Warren,* for respondents.

McADAM, Ch. J.—The work performed by the plaintiff was done for "The Grant New Process · Coffee Company." Whether this title represents a corporation, a legal entity, so that its acts are to be considered those of the corporate body, and not of the members composing it, or whether, in contemplation of law, the title is to be regarded as the name under which the defendants as individuals (partners or otherwise jointly interested) did business, is the question presented for determination by this appeal. The complaint charges that the defendants are partners, and they are not liable in the present form of action, unless as to creditors they have been doing business under circumstances which in law make them jointly liable for the plaintiff's demand. The evidence shows that at the time the plaintiff's debt was contracted the place of business of "The Grant New Process Co.," was at 266 Broadway, New York city. That the persons doing business there were the three defendants herein. The answer denies the copartnership charged, and alleges that the Grant New Process Coffee Co., was, at the times alleged in the complaint, a corporation duly organized under and by virtue of an act of the legislature of New Jersey, passed April 7, 1875, and March 8, 1877. Upon the trial, the certificate of incorporation of the company was offered in evidence by the plaintiff. From this certificate it appears "that the city of Plainfield, in the county of Union, and State of New Jersey, is the place where the business of the company is to be conducted." The amen-

ded certificate recites the same fact, with this addition, to wit: "And the place out of this State (New Jersey) where the same is to be conducted is the city of New York, in the State of New York." It also recites that "the portion of the business of said company which is to be carried on out of this State (New Jersey) is the selling of the manufactured products of the said company, and the granting and selling of licenses, rights and privileges under the patents owned by the said company." This provision was inserted to answer the requirements of section 15 of the act of New Jersey, passed April 7, 1875, which provides that "any company, organized as aforesaid, may carry on a part of its business out of this State, and have one or more offices and places of business out of this State . . . . Provided that the certificate of the organization of such company shall state what portion of its business is to be carried on out of this State," &c. The claim in suit is for coffee urns manufactured by the plaintiff's assignors and delivered at 266 Broadway aforesaid. These urns were not the manufactured products of the Grant New Process Coffee Co., and the making of such purchases and the creation of obligations therefor by said company are apparently not within the purposes for which that company was, by the laws of the State of New Jersey and the charter granted thereunder, permitted to transact business within this State. Upon the trial the plaintiff offered to prove that the Grant New Process Co., never did business in New Jersey. This evidence was objected to by the defendants and excluded, under the plaintiff's exception. The plaintiff then offered to prove that the company never did business in Plainfield. This evidence was also objected to by the defendants, and was also excluded, under like exception.

The plaintiff next offered to show that the company had no valid existence in this State and had no power

to engage in the transaction testified to. This evidence was also objected to by the defendants and was likewise excluded, under exception. The court thereupon said to the plaintiff's attorney: "As you have yourself offered in evidence the certificates of incorporation of that company, you cannot now question its corporate existence or authority to make contracts; you are estopped by having offered in evidence the certificates of incorporation." The plaintiff thereupon excepted to this ruling. These rulings (particularly the last), were broad enough to preclude further offers of proof, and are all of them erroneous. Offering the certificates in evidence did not estop the plaintiff from proving that the company had failed to take the subsequent steps necessary to the consummation of its corporate existence, and this is practically what the plaintiff was endeavoring to show. If the Grant New Process Company had no office or place of business in Plainfield, and never did business in New Jersey, these facts, in view of its charter, which designates "Plainfield, New Jersey," as the principal place where its business was to be conducted, make it apparent that it was not an existing corporation within the meaning of the statute of New Jersey under which it purports to have been incorporated. A corporation cannot become a tramp. It must have a domicil—not in theory but in fact—within the sovereignty that created it. If the corporation never did business in New Jersey, and has no office there, it would be difficult, if not impossible, for a creditor to obtain service on the corporation in the State where it claims to have been incorporated, much less obtain from the courts of that State any process which could reach assets or effects of the corporation to satisfy any judgment which might be recovered. If the tax assessors of New York sought to assess the company, they might hold with apparent truthfulness that it was a New Jersey cor-

poration, while the tax officers of New Jersey (if the facts offered to be proved are true) could find no representative or office of such company within that State. These illustrations prove that such a scheme might operate as a fraud upon the law, which courts cannot permit. A corporation, in the nature of things, must have some fixed office or place of business in the State where it was incorporated, so that creditors may know where to find it, that they may present, and, if necessary, prosecute their just demands. The statute contemplates that such place of business shall exist not only in name but in fact, for if the corporation has no place of business in the State where it was incorporated, it does not fit the charter, and it cannot have branch offices elsewhere. Like a live tree, it cannot consist of branches only, but must take root in its native soil before it can extend its branches into other States. A corporation created under the laws of one State cannot migrate to another and carry with it its principal office, chartered privileges and immunities, so as to locate thereunder and exercise its corporate functions in any State its incorporators see fit to designate (*Angell & Ames on Corporations,* 10th ed. § 104). State comity cannot recognize such a claim as the one suggested, and yet all this can legally be done if the rulings made by the trial judge are correct. If the defendants had been sued in New Jersey, and the evidence rejected here had been received there, the alleged charter would have afforded the defendants no protection. Two cases in the New Jersey courts are in point :

In Hill *v.* Beach (1 *Beasley,* 31), a bill was filed for a partnership accounting; it was claimed that the parties in interest were a corporation. It appeared that they came to New York and organized, under the act of 1848, by the name of " The Belleville Quarry." All their proceedings were regular on their face. The

court said it could not be recognized as a legal corporation in New Jersey, for, says the chancellor: "If it can be, what need is there of any general or special law in our State? Individuals desirous of carrying on any manufacturing business may go into the city of New York, organize under the laws of that State, erect all their manufacturing establishments here, and under their assumed name transact their business, not only free from all personal responsibility, but under cover of a corporation not amenable to our laws." The court held that it was apparent that the organization in New York was a fraud upon the laws of that State ; that "although their object in taking the name they did was to avoid personal responsibility, the law will not allow them so to escape. They must be deemed partners even as among themselves," and an accounting between them was directed.

In Wonderly v. Booth (7 *Vroom N. J.* 250), it appeared that the legislature chartered a fire insurance company to be located in Trenton. The parties organized and did business in Jersey City. The court said " to attempt to establish it in Jersey City was a palpable and entire perversion of the object of the act, and must be held to be void. It gave no corporate color to the company that the courts should recognize for the protection of those who lent themselves knowingly to the scheme. It was a fraud upon the act. The doctrine that the organization cannot be inquired into collaterally has no application, because the charter does not fit the company and was not intended for it. The organization is entirely outside the act and has no existence as a corporation, real or de facto. The extent to which a corporate body under such a charter may contract in other places than where located is not in the case with its present aspect. That is a question of power merely, while the question before us is one of corporate existence." The action was

Kruse *v.* Dusenbury.

against the persons who organized the company, as partners, upon a policy issued in form by the company. The court held the defendants liable as partners.

The principles decided by these authorities apply to the present case, and if, as the plaintiff claims, the Grant New Process Co. never did business in New Jersey and had no office or place of business at Plainfield, it was a fraud upon the laws of New Jersey and cannot screen the defendants as it organizers from personal responsibility as partners for contracts made in New York under the assumed name. These conclusions are just as well as legal. If there was no valid corporation according to the laws of New Jersey, the defendants are partners, because the name which they assumed represents them and no other legal entity.

The term partnership has been variously defined, but the relation is generally determined by a mutual participation in the profit and loss of some trade or business carried on by individuals in their names or under an assumed name for their benefit.

If the charter of the Grant New Process Coffee Co., does not fit the business carried on by the defendants under that title, and this is practically what the plaintiff offered to prove, then the partnership relation just described becomes applicable with its concomitant liabilities. Upon a new trial the defendants may be able to vindicate the official integrity of their corporation, may prove that it has taken root in its native State, and that the corporate body has an actual existence there, and may be able to show that the obligation contracted in the corporate name was within the powers of the corporation, so as to exempt its incorporators and agents from personal responsibility. But upon the present record the judgment rendered cannot be sustained.

For these reasons the judgment appealed from must

be reversed and a new trial ordered, with costs to the appellant to abide the event.

HYATT and BROWNE, JJ., concur.